UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JOHN CRAMER,

                        Plaintiff,

                 — against —

PAUL PYZOWSKI, Assistant Deputy Chief
Clerk and Supervisor of Court Officers of the
Family Court, State of New York, Kings County,
and ROBERT RATANSKI, Chief Clerk of the
Family Court of the State of New York, Kings
County; and JOHN DOES 1 through 10, the
individual defendants being sued in their
respective individual and official capacities,

                    Defendants.
-----------------------------------------------------------X

**MEMORANDUM and ORDER**

04 CV 1122 (SLT) (SMG)

**TOWNES, United States District Judge:**

       Plaintiff John Cramer ("Plaintiff" or "Cramer") brings this action against Paul Pyzowski

("Pyzowski"), Assistant Deputy Chief Clerk of the New York State Family Court, Kings County,

and Robert Ratanski ("Ratanski"), Deputy Chief Clerk of New York State Family Court, Kings

County, (collectively "Defendants"), alleging discrimination and retaliation based on ethnicity

and national origin, pursuant to § 1983, and related state law claims.[1]  Defendants now move for

---

[1] Plaintiff also alleges numerous other violations, including unlawful deprivation of a due process protected liberty interest and interference with right of access to the courts.  In addition, he brings a conspiracy claim against Defendants pursuant to §§ 1983 and 1985, and state law claims of defamation, libel, slander, and prima facie tort. However, Plaintiff does not oppose or even mention any of these claims in his opposition brief.  Rule 56 provides that if a non-moving party fails to oppose a summary judgment motion, then "summary judgment, if appropriate, shall be entered against" him.  Fed. R. Civ. P. 56(e).  However, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."  *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)).  This Court has examined the Defendants' submissions and determined that Defendants have met their burden; therefore, all unopposed claims are dismissed. In addition, these claims are discussed at the end of this opinion.

summary judgment pursuant to Fed. R. Civ. P. 56(c).    For the reasons set forth below,

Defendants' motion is granted.


# BACKGROUND


John Cramer has been employed in the New York State Court System for over 18 years.

(John Cramer Affidavit ("Cramer Aff.") at ¶¶ 3, 4.)  In 2002, after 15 years as a court officer in

Family Court, Cramer passed a qualifying examination for the position of senior court clerk.  (*Id.*

at ¶ 5.)  On December 5, 2002, he received a promotional transfer, on a probationary basis, to the

position of senior court clerk in Kings County Family Court, under the supervision of Paul

Pyzowski.  (*Id.* at ¶ 6.)  Cramer was not assigned to a permanent division or "Part" of the Court

system, but was rotated into the various Parts based on staffing needs and to familiarize him with

the variety of work performed in Family Court.  (Paul Pyzowski Affidavit ("Pyzowski Aff.") at

¶ 22.)

According to Defendants, ample training opportunities were provided to Cramer after he

began his position as a senior court clerk.  (Pyzowski Aff. at ¶¶ 4-9; Robert Ratanski Affidavit

("Ratanski Aff.") at ¶ 27.)  On December 12 and 13, 2002, Cramer attended a training seminar in

Manhattan, for all new senior court clerks in the Family Courts city wide.  (Pyzowski Aff. at ¶

4.)  He also received eleven days of on-the-job training with other senior clerks from December

through March 2003.  (*Id.*)  In mid-April 2003, Pyzowski arranged for Cramer to receive training

in certain Parts of the system handling foster care approval and review matters and abuse and

neglect matters. (*Id.* at ¶ 6.) Training with experienced clerks in those Parts occurred on April 15, 16, 17, and 21, 2003. (*Id.*) During April, May and June, Plaintiff had eighteen training sessions with senior clerks in the Permanency Planning Parts and in the Juvenile Delinquency Parts. (*Id.* at ¶ 7.) In addition, beginning in March and continuing through June, all clerks, including Cramer, received instruction and training on the new computer system that was to be installed in the Family Court in Kings County in early June 2003. (*Id.* at ¶ 9.)

Despite the training opportunities, Pyzowski received numerous reports that Cramer's work was inadequate. In April 2003, Judge Gary, who sat in the Custody and Visitation Part, requested someone other than Plaintiff be put in his Part while his regular clerk was on vacation because Plaintiff's performance was unsatisfactory during a prior assignment to Judge Gary's Part in March 2003. (*Id.* at ¶ 5.) In July and August, Pyzowski received reports from supervisors Stephen Byrnes and Elizabeth Horowitz that Cramer's work was not meeting expectations. (*Id.* at ¶ 10.) In response, Pyzowski assigned Cramer to seven more days of training during this period. (*Id.*)

On August 20, 2003, Pyzowski met with Cramer and issued an interim evaluation, indicating that Cramer's performance needed improvement if Cramer was to successfully pass his probation. (*Id.* at ¶ 11.) During this evaluation, Pyzowski reviewed the areas where Cramer was deficient and indicated what was expected of him regarding his performance. (*Id.*; *see also* Pyzowski Aff., Exh. A.) On September 16, 2003, Pyzowski met with Cramer again to discuss his performance because Pyzowski's review of Cramer's files several days earlier had revealed numerous errors in his work. (Pyzowski Aff. at ¶ 12.) In addition, a memorandum from Ms. Horowitz dated September 15, 2003, indicated that Cramer's work was incomplete and incorrect

work, and that he inappropriately stored active case files in his locker. (*Id.*; *see also* Pyzowski Aff., Exh. B.) As a result of these continued problems, Pyzowski scheduled additional training for Cramer with more senior clerks and gave him some afternoons free to catch up on his work and make the needed corrections to the files. (Pyzowski Aff. at ¶ 12.) However, in a follow-up meeting on September 24, 2003, Pyzowski discovered that Cramer had failed to make the required corrections. (*Id.* at ¶ 13.)

Although Plaintiff was given additional training opportunities, he continued to have problems. For example, Cramer's failure to accurately transfer the information contained on judges' endorsement sheets led to orders that were frequently inaccurate and incomplete. (*Id.* at ¶ 17.) In one instance, Cramer drafted an order directing that a father be kept away from his children, when the judge's notations indicated that the father could take the children out of state for visitations. (*Id.*) In addition, he consistently failed to enter the complete information about cases into the computer tracking system, often leaving incomplete entries. (*Id.*) According to Pyzowski, "the number of mistakes made by Mr. Cramer and the nature of those mistakes indicated to me that Cramer lacked a basic understanding of the work of the Family Court." (*Id.*) On October 23, 2003, as a result of Cramer's continued poor work performance, Pyzowski issued a final evaluation of Mr. Cramer's work and recommended that his probationary employment with Kings County Family Court be terminated and that Cramer be returned to his prior position. (*Id.* at ¶ 18; *see also* Pyzowski Aff., Exh. E.) On November 19, 2003, 16 days prior to the completion of his one year probationary period, Cramer was terminated from his position as a senior court clerk and returned to his prior position. (Cramer Aff. at ¶ 23.) The other probationary clerks that came to Kings County Family Court in 2003 exhibited satisfactory

work performance and passed their probationary terms.  (Paul Pyzowski Supplemental Affidavit ("Pyzowski 2d Aff.") at ¶ 11.)  Cramer was the only probationary clerk whose work record was so poor that he did not pass his probation.  (*Id.*)

Cramer disputes Defendants' claim that he was provided with ample training opportunities, and states that he repeatedly expressed concerns to Pyzowski about what he perceived as inadequate training.  (Cramer Aff. at ¶ 7.)  Cramer claims that the training seminar in Manhattan on December 12-13 was not a training seminar at all, but a two day orientation that simply provided an overview of the Court System with no training in the duties of a clerk.  (*Id.* at ¶ 8.)  He also claims that the eleven days of "on the job training" from December to March 2003 was of little use because all he did was watch other clerks do their jobs, but he states there was no explanation for what was being done.  (*Id.*)  He also characterizes his eighteen training sessions in the Permanency Planning and Juvenile Delinquency Parts as "not training sessions at all, but simply watching clerks do work, for brief periods of time, without explanation."  (*Id.*)

According to Cramer, Pyzowski assigned him to the most undesirable Parts of the system with the heaviest caseloads and most demanding requirements.  (*Id.* at ¶ 10.)  He states that other similarly situated clerks, including Tony Palermo and Obed Bergis, were given better assignments and permanent posts, and other breaks and privileges that Cramer did not receive.  (*Id.*)  He also claims that Pyzowski spoke to him in a demeaning manner and occasionally yelled or cursed at him.  (*Id.*)

In March of 2003, Plaintiff began complaining to his Union about these concerns.  (*Id.* at ¶ 11.)  On April 15, 2003, he requested a transfer to another court, but states the Defendants incorrectly advised him that, according to the Rules of the Chief Judge, Cramer could not request

a transfer to another position until he had been on the job for one year. (*Id.* at ¶ 12.) Cramer claims that the harassment continued and worsened after his complaints to the union and his request for a transfer. (*Id.* at ¶ 13.) On July 8, 2003, Plaintiff filed a written complaint with Chief Judge Judith Kaye outlining the harassment by Pyzowski and his perceived lack of proper training. (*Id.* at ¶ 14; *see also* Defendants' Supplementary Affirmation ("Supp. Aff."), Exh. C.) Cramer asked Judge Kaye for a transfer because he said the stressful working conditions were causing him to suffer from high blood pressure and heart problems. (*See* Supp. Aff, Exh. C.) On August 25, 2003, five days after he received the negative interim evaluation from Pyzowski, Cramer wrote another letter to Judge Kaye, again asking for a transfer. (*Id.*) None of Cramer's letters stated that Cramer thought Pyzowksi's mistreatment of him was due to discriminatory animus based on Cramer's Irish ethnicity. (*Id.*) Cramer claims that the harassment continued to worsen after he made these complaints. (Cramer Aff. at ¶ 16.) Pyzowski states that he was not aware of any letters that Cramer sent to Judge Kaye until after Cramer's termination. (Pyzowski 2d. Aff. at ¶ 7.)

Cramer does not present any evidence of comments or actions taken by Pyzowski or Ratanski that reference his Irish ethnicity. He points to no statements or actions on the part of either defendant that indicate an anti-Irish bias, or suggest a discriminatory attitude towards Irish people. While Cramer admits that, at first, it was "clear that Pyzowski just didn't like me," he says that "[f]inally, it became apparent that my Irish ethnicity had a motivating and substantial role in the adverse employment actions taken by the [D]efendants." (*Id.* at ¶ 24.) Cramer states that he thinks Pyzowski's actions were motived, at least in part, by ethnic discrimination because the only two clerks Cramer thought were mistreated were himself and another Irish clerk,

Eugene Brady. (*Id.* at ¶ 26.) Cramer alleges that he and Eugene Brady were the only two clerks who Pyzowski required to wait in his office for assignments every day, while similarly situated clerks were allowed to take coffee breaks during that time. (*Id.*) Cramer also points out that they were the only two clerks not given permanent posts. He states that he and Brady were treated in a different, hostile, and demeaning fashion by Pyzowski, and other similarly situated clerks did not experience this hostile treatment. (*Id.*)

Defendants note that, during the time period at issue, Mr. Brady, who was a senior court clerk of several years standing, did not have a permanent assignment because he was ill and frequently absent from work. (Pyzowski Aff. at ¶ 22.) In addition, Pyzowski states that he never knew Cramer's ethnic background during his probationary period and only learned of it after Plaintiff's termination. (*Id.* at ¶ 19.) Cramer counters that Pyzowski knew about Cramer's Irish heritage because they had discussed it many times. (Cramer Aff. at ¶ 25.) Specifically, according to Cramer, they discussed the possibility of Cramer taking time off to participate in the St. Patrick's Day Parade and Pyzowski had also commented on Cramer's clover tie clip on more than one occasion. (*Id.*)

Ratanski also claims he did not know Cramer's ethnic background during the time that Cramer was a probationary employee in Kings County Family Court. (Deposition of Robert Ratanski ("Ratanski Dep.") at 35:2-12.) As Deputy Chief Clerk of the Family Court of Kings County, Ratanski had supervisory responsibility over all of the non-judicial employees in Kings Family Court, including senior court clerks and probationary clerks. (Ratanski Aff. at ¶ 2.) On November 10, 2003, upon receiving Pyzowksi's final evaluation that contained a recommendation to terminate Plaintiff's probationary employment, Ratanski served Cramer with

the notice of termination letter from Deputy Chief Administrative Judge Joan B. Carey.

(Ratanski Aff. at ¶¶ 24-26.)   Plaintiff was terminated on November 19, 2003.


# DISCUSSION

*A.  Standard for Summary Judgment*

Summary judgment is generally appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994) (quoting Fed. R. Civ. P. 56(c)).  The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor.  *See Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried.  *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).  The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp*., 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477

U.S. at 252), or "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. *See Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).

Summary judgment is appropriate in discrimination cases. *See Weinstock v. Columbia Univ*., 224 F.3d 33, 41 (2d Cir. 2000); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). The Supreme Court has reiterated that trial courts "should not 'treat discrimination differently from other ultimate questions of fact.'" *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).


*B. Official Capacity Immunity*

Plaintiff requests relief in the form of monetary damages, asserting claims against Defendants in both their official and individual capacities. The claims against Defendants in their official capacities are barred by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-103, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (citing *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)) (a claim for damages against state officials in their official capacities is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *cf. Hafer v. Melo*, 502 U.S. 21, 27-31, 112 S. Ct. 352, 116 L. Ed. 2d 301 (1991) (Eleventh Amendment does not bar actions for damages against state officials sued in their personal or

individual capacities).  Accordingly, Cramer's claims against Defendants in their official capacities are dismissed.

*C. Plaintiff's § 1983 Claim*

Under 42 U.S.C. § 1983,[2] a plaintiff may recover on an equal protection claim if he is treated differently from other similarly situated employees due to his race or national origin. In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right.  *Back v. Hastings on Hudson Union Free School Dist.*, 365 F.3d 107, 122 (2d Cir. 2004).  "In this Circuit, personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Id.* (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)).  A person acts under the color of state law only when exercising power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.  *Back*, 365 F.3d at 122-23. State employment is generally sufficient to render the defendant a state actor.  *Id.* at 123. Therefore, Pyzowski and Ratanski acted under color of state law when they recommended Cramer's termination.

---

[2] Title 42, Section 1983 of the United States Code states:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."  42 U.S.C. § 1983.

Once action under color of state law is established, Cramer's equal protection claim is analyzed under the same burden-shifting framework as a claim brought pursuant to Title VII. *See Back,* F.3d at 123; *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998) ("In analyzing whether conduct was unlawfully discriminatory for purposes of § 1983, we borrow the burden-shifting framework of Title VII claims."); *Jemmott v. Coughlin,* 85 F.3d 61, 67 (2d Cir. 1996) (courts regularly utilize Title VII law when considering § 1983 equal protection claims). Under this framework, initially set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), a plaintiff must first establish a prima facie case of discrimination. *See id.* Once the plaintiff has made out a prima facie case, the employer is required to offer a legitimate, nondiscriminatory business rationale for its actions. *See id.* If the employer articulates such a reason, the presumption of discrimination dissolves, and the burden shifts back to the plaintiff to prove that the employer's stated reasons are merely pretextual and that discrimination was the real reason, or one of the real reasons, for the adverse employment action. *See id.*

### 1. Plaintiff Has Failed to Establish a Prima Facie Case of Discrimination

To establish a prima facie case of discrimination, a plaintiff must show four things: (1) he is a member of a protected class;  (2) he is qualified for the position; (3) he has suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *Weinstock*, 224 F.3d at 42; *Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir. 2000).

Defendants do not contest that Plaintiff belongs to a protected class in terms of his claim of national origin discrimination. However, they argue that Plaintiff has failed to satisfy the second prong necessary to establish a prima facie case. The Second Circuit has at times formulated the "qualification" prong as requiring that a plaintiff show that he "was performing his duties satisfactorily." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997); *see also Meiri*, 759 F.2d at 995. Defendants point to the fact that Plaintiff has failed to show that he was performing his work satisfactorily, and therefore, argue that he does not satisfy this prong.

However, in *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87 (2d Cir. 2001), the Second Circuit defined this element differently. In that case, the Court held that a plaintiff need only "establish basic eligibility for the position at issue," by showing that he or she "possesses the basic skills necessary for performance of [the] job." *Id.* at 91-92 (internal quotation omitted). Under this definition, Plaintiff would satisfy this element because he passed the qualifying test for the senior court clerk position and established his eligibility for the position at issue. This articulation comports with the *de minimis* burden on the plaintiff in establishing a prima facie case. *Calabro v. Westchester BMW, Inc.*, 398 F. Supp. 2d 281, 288 (S.D.N.Y. 2005). Consistent with this approach, if an otherwise qualified employee is alleged to have created circumstances justifying his termination, that conduct is appropriately evaluated, not in the prima facie "qualifications" analysis, but rather in assessing the employer's stated neutral reason for the adverse action and the employee's pretext case. *Id.* at 289*; see also Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001); *de la Cruz v. New York City Human Resources Admin. Dept. of Social Services,* 82 F.3d 16, 20 (2d Cir. 1996). Therefore, this Court finds that Plaintiff has satisfied the second prong of his prima facie case.

As for the third prong, Defendants concede that Plaintiff was terminated from his probationary position of senior court clerk and transferred back to his prior civil service position of court officer pursuant to the Rules of the Chief Judge. Cramer's termination qualifies as an adverse employment action and satisfies this element of his case.

In order to establish the final element of his prima facie case, Cramer must provide evidence "adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the [law]." *Marlow v. Office of Court Admin. of State of New York*, 820 F. Supp. 753, 756 (S.D.N.Y. 1993) (quoting *Intern. Bhd. of Teamsters v. United States*, 431 U.S. 324, 358, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977)). A showing of disparate treatment is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case. *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). In order to establish a disparate treatment claim, a plaintiff must show that he or she was "similarly situated in all material respects to the individuals with whom [he or she] seeks to compare [himself or herself]." *Id.* (internal quotation and citation omitted). Generally, the question of whether two employees are similarly situated is a triable issue for the fact finder. *Id.*; *see also Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). Nonetheless, a plaintiff must offer sufficient evidence from which a jury could reasonably conclude that there was indeed disparate treatment of similarly situated employees. *Hayes v. Kerik*, 414 F. Supp. 2d 193, 204 (E.D.N.Y. 2006); *Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 460 (S.D.N.Y. 2006). "[A] court can properly grant summary judgment where no reasonable jury could find the similarly situated prong met." *Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001).

Plaintiff compares himself to Charles Ellmore, Obed Burgess, and Uranis Thomas, who were granted extensions of their probationary terms, while Plaintiff was not. However, Plaintiff is not similarly situated to these other clerks. Charles Ellmore and Obed Burgess were clerks in the Bronx Family Court, and Plaintiff has not demonstrated that Defendants have any authority or jurisdiction over personnel matters at Bronx Family Court. Uranis Thomas is a Kings Family Court clerk who was terminated based on the recommendations of Defendants because she had time and attendance difficulties. She was re-instated by James Kenny, Chief Clerk of the Family Court, because her attendance failures were caused by serious family problems and she was granted another chance by Mr. Kenny. Further, there is no evidence that any of these individuals to whom Plaintiff compares himself had sub-standard work product. Cramer compares himself to Tony Palermo but they are not similarly situated because Palermo's work performance was not inadequate. Cramer is not similarly situated to any of the others except for the fact that they are all clerks, which is insufficient to establish similarity in all material respects. His disparate treatment claim must, therefore, fail.

Plaintiff has failed to produce any other evidence that would create an inference that Plaintiff's transfer back to his old position was based on discriminatory reasons. While courts have held that there is no single way to establish "circumstances giving rise to an inference of discrimination," it is clear that there must be sufficient evidence of a causal connection between Plaintiff's termination and his ethnic origin. *See Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37-38 (2d Cir. 1994). A number of circumstances may contribute to an inference of discriminatory intent including: "[t]he employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; employer's

criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge; or the timing of the discharge." *Id.* at 37 (internal citations omitted).

Plaintiff claims that he and Eugene Brady, the other Irish clerk, were treated differently than the other clerks by Pyzowski. He claims that both he and Brady were never given a permanent assignment. However, Defendants have stated that Brady was not given a permanent assignment because he was sick and would often have to miss work. Cramer also claims that he and Brady were forced to wait in Pyzowski's office in the morning for their assignments while other clerks went to get coffee. This "coffee-break" allegation does not rise to the level of anti-Irish bias. It is a stretch to conclude that because Plaintiff spent the time before the morning assignment sitting in Pyzowski's office, that he was discriminated against because of his Irish ethnicity.

Furthermore, Plaintiff has not pointed to any statements made by Pyzowski or Ratanski or anyone else in Family Court that would indicate anti-Irish bias.[3] He has pointed to nothing that would establish any inference of bias except his own self-serving statements. However, "feelings and perceptions of being discriminated against are not evidence of discrimination." *Bickerstaff v. Vassar College,* 196 F.3d 435, 456 (2d Cir. 1999) (internal quotations omitted). Thus, Plaintiff has failed to show that the circumstances surrounding his termination and transfer to his prior civil service position give rise to an inference of discrimination.

---

[3] It is disputed by the parties whether Pyzowski was even aware that Cramer was Irish.

*2. Defendants Have Provided a Legitimate Explanation for Cramer's Termination*

Assuming, *arguendo*, that Cramer did present a prima facie case of discrimination, Defendants can rebut his prima facie case by "articulat[ing] but...not prov[ing]" a legitimate, non-discriminatory reason for the adverse employment action. *Fisher v. Vassar College*, 70 F.3d 1420, 1433 (2d Cir. 1995). The employer's burden here is one of production of evidence rather than one of persuasion. *Id.* Defendants have articulated a legitimate, non-discriminatory reason for transferring Plaintiff back to his old position, citing unsatisfactory job performance as the reason that Cramer was demoted. Defendants have produced a detailed record of Cramer's performance deficiencies leading up to his transfer and have, therefore, met their burden. Because Defendants have satisfied their step-two burden of production, the burden of persuasion shifts back to Plaintiff.


*3. Plaintiff Has Failed to Show Pretext*

Once the defendant articulates legitimate nondiscriminatory reasons for the adverse employment action, a plaintiff must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. Plaintiff has not provided any evidence that the legitimate reasons offered by Defendants were pretext. Instead, he merely states that "the sort of disparate treatment that plaintiff alleges, if proved can . . . establish . . . the pretextual character of the defendant's non-discriminatory explanation." (*See* Pl. Opp. Mem. at ¶ 40.) Plaintiff also argues that the unsatisfactory performance appraisals submitted only days afer he complained to Judge Kaye give rise to an inference of discrimination. (*Id.*)

Plaintiff's arguments must fail. Plaintiff has not shown that he was singled out for differential treatment based on his national origin. He was not similarly situated to anyone that he claims received better or different treatment than he did. Furthermore, Plaintiff's letters to Judge Kaye make no mention of any anti-Irish bias, and do not show that Plaintiff received poor work evaluations because he was Irish or complained about anti-Irish discrimination.[4] In addition, there is no evidence that Pyzowski knew about Cramer's letters and Pyzowksi denies having any knowledge of these letters until after Cramer's termination.

In addition, Plaintiff has not disputed his poor performance and negative evaluations. Plaintiff may not establish pretext by rationalizing his errors or by blaming others, or by complaining about inadequate training. *See Gambello* v. *Time Warner Communications, Inc.*, 186 F. Supp. 2d 209, 224 (E.D.N.Y. 2002) ("[Plaintiff]'s fundamental disagreement with the conclusions [his] supervisors drew from incidents which [he] admits occurred, and [his] subjective belief that they should not have reflected badly on [his] performance . . . is not evidence that [his] supervisor's appraisals were a sham, invented to mask discrimination."). Plaintiff's job performance was consistently unsatisfactory, and Cramer was negatively evaluated by numerous people besides Pyzowski, including Judge Gary and supervisors Stephen Byrnes and Elizabeth Horowitz. Cramer has not shown that Pyzowski's stated reason of poor job performance was pretext, and, therefore, Plaintiff's discrimination claim is dismissed.

---

[4] The Court notes that Plaintiff appears to be confusing a discrimination claim and a retaliation claim by advancing this argument.

*D. Plaintiff's Claim also Fails Under a Mixed Motives Analysis*

Cramer's motion papers indicate that a mixed-motive analysis should also be applied to the facts of his case. In mixed-motive cases, instead of using the *McDonnell Douglas* standard, the Court applies a different analysis set out in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989) (plurality opinion): if the plaintiff establishes that a prohibited discriminatory factor played a "motivating part" in a challenged employment decision, the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision anyway. *See also Ostrowski v. Atlantic Mut. Ins. Cos*., 968 F.2d 171, 180 (2d Cir. 1992). To warrant a *Price Waterhouse* burden shift, the plaintiff must show that an impermissible criterion was in fact a motivating or substantial factor in the employment decision. Only after it is shown that "the forbidden animus was a motivating factor in the employment decision" does the burden shirt to the employer to prove that it would have made the same decision absent the discriminatory factor. *See Ostrowski*, 968 F.2d at 181.

Because the plaintiff must show that the evidence is *sufficient* to allow a fact finder to infer both permissible and discriminatory motives, the plaintiff's initial burden in a *Price Waterhouse* mixed-motive case is heavier than the *de minimis* showing required to establish a prima facie *McDonnell Douglas* case. *Raskin v. Wyatt Company*, 125 F.3d 55, 60 (2d Cir. 1997). Evidence potentially warranting a *Price Waterhouse* burden shift includes, *inter alia*, policy documents and evidence of statements or actions by decision makers "that may be viewed as *directly reflecting* the alleged discriminatory attitude." *Raskin,* 125 F.3d at 60-61 (internal quotations and citation omitted) (emphasis in *Raskin)*. "In short, to warrant a mixed-motive burden shift, the plaintiff must be able to produce a 'smoking gun' or at least a 'thick cloud of

smoke' to support his allegations of discriminatory treatment." *Id.* at 61 (internal citations omitted).

Because Cramer has not produced any evidence of discrimination based on national origin on the part of Defendants that would constitute a smoking gun, or even a thick cloud of smoke, Cramer has failed to meet his burden. A mixed motive burden shift is, therefore, not appropriate and Cramer's claim cannot survive summary judgment under this analysis.

*E. Plaintiff's Retaliation Claim Must Be Dismissed*

Retaliation claims are evaluated under the same *McDonnell Douglas* burden-shifting framework used for analyzing discrimination claims. *See Terry v. Ashcroft,* 336 F.3d 128, 141 (2d Cir. 2003). "To establish a prima facie case of retaliation, an employee must show '[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action.' " *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir. 1998) (quoting *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir. 1995)). As with direct discrimination claims, once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the allegedly retaliatory employment decision. *See Quinn*, 159 F.3d at 769. If the defendant does so, the burden returns to the plaintiff, who must show that the articulated non-discriminatory reason for defendant's action is in fact a pretext for retaliation. *Id*.

Cramer's retaliation claim must fail because he did not participate in a protected activity. A protected activity is any "action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.* 202 F.3d 560, 566 (2d Cir. 2000). An employer retaliates when it attempts to stifle allegations of illegality or punish those making accusations. It follows that an employer must have notice that a plaintiff opposed conduct prohibited by the statute. *Galdieri-Ambrosini v. Nat'l Realty and Dev't Corp.*, 136 F.3d 276, 292 (2d Cir.1998) ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII.").

Here, Plaintiff wrote two letters to Judge Kaye complaining about harassment. He also complained to the union and requested a transfer. He also filed a complaint with the Public Employment Relations Board against the Kings County Family Court.[5] However, there was no mention in any of Cramer's complaints of any anti-Irish bias or other prohibited discrimination by Defendants. Although "[c]omplaints about conduct clearly prohibited by the statute need not mention discrimination or use particular language," *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007), "ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity." *Id.* The Court finds nothing in Cramer's complaints that would make his employer aware that he was alleging anti-Irish discrimination. Filing a complaint about conduct other than discrimination, such as a request for transfer or time sheet discrepancy, is simply not

---

[5] This complaint was about a dispute regarding Plaintiff's time sheets.

protected activity.  Therefore, Cramer cannot satisfy the first prong of a retaliation claim and his

claim must be dismissed.[6]


*F. Plaintiff's Conspiracy Claims Under Sections 1983 and 1985 Must Be Dismissed*

A conspiracy claim under 42 U.S.C. § 1983 "should . . . be stated as a claim under

[s]ection 1985, which applies specifically to conspiracies."  *Webb v. Goord*, 340 F.3d 105, 110

(2d Cir. 2003).  Section 1985(3) prohibits two or more persons from conspiring to "depriv[e],

either directly or indirectly, any person or class of persons of the equal protection of the laws, or

of equal privileges and immunities under the laws . . ." 42 U.S.C. § 1985(3).  Section 1985(3)

does not create any substantive right; rather, it provides a remedy for conspiracies to violate a

person's right to equal protection.  *See Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d

Cir. 1996).  To establish a claim of conspiracy under § 1985, a plaintiff must show (1) a

conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of

persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3)

an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or

property or deprived of any right of a citizen of the United States.  *Mian v. Donaldson, Lufkin, &*

---

[6] To establish a First Amendment retaliation claim under Section 1983, Cramer must establish that (1) the speech at issue was protected; (2) he suffered an adverse employment action; (3) there was a causal connection between the protected speech and the adverse employment action.  *Knight v. City of New York,* 303 F. Supp. 2d 485, 501 (S.D.N.Y. 2004).  To constitute protected speech, the speech at issue must involve a matter of public interest. *See Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968); *see also Grillo v. New York City Transit Authority*, 291 F.3d 231, 235 (2d Cir. 2002) ("To be protected, the speech of a public employee like [Plaintiff] generally must have been made as a citizen on matters of public concern rather than as an employee on matters of personal interest . . .").  Any attempt by Cramer to characterize his letters to Judge Kaye as public speech protected by the First Amendment must fail because Cramer was not speaking on a matter of public concern but on matters relating to his personal interests.

*Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993); *see also Manbeck v. Katonah-Lewisboro School Dist*., 435 F. Supp. 2d 273, 279 -280 (S.D.N.Y. 2006). Furthermore, the conspiracy must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Mian*, 7 F.3d at 1088 (quoting *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 829, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983)). "In order to maintain an action under [s]ection 1985, a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" *Webb,* 340 F.3d at 110-11 (quoting *Romer v. Morgenthau,* 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)). The Second Circuit has held that a "complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Gyadu v. Hartford Ins. Co.,* 197 F.3d 590, 591 (2d Cir. 1999); *see also Pinero v. Long Island State Veterans Home,* 375 F. Supp. 2d 162, 169 (E.D.N.Y. 2005).

Plaintiff's complaint contains only conclusory allegations of defendants' alleged conspiracy, which are insufficient to support a § 1985 claim, and Cramer makes no arguments, nor does he present any additional evidence, to oppose Defendants' motion for summary judgment to dismiss the claim. Cramer has provided absolutely no factual basis supporting a meeting of the minds, or any evidence that would show Defendants entered into any type of agreement. Further, because Cramer has not shown any violation of § 1983, there is no basis on which he can pursue a § 1985 claim. *Knight v. City of New York*, 303 F. Supp. 2d 485, 501-02 (S.D.N.Y. 2004) ("Section 1985(3) provides a civil cause of action only when some other defined right has been violated."). Accordingly, this claim must be dismissed.

*G. Plaintiff Has No Property Interest in His Probationary Position as Senior Court Clerk*

A probationary employee, such as plaintiff, who can be dismissed at will, does not have a property interest in continued employment, and his dismissal does not trigger a right to due process. *See Finley v. Giacobbe*, 79 F.3d 1285, 1297-98 (2d Cir. 1996); *see also Grillo v. New York City Transit Authority*, 122 F. Supp. 2d 385, 392 (E.D.N.Y 2000) ("As a probationary employee [plaintiff] has under New York law no entitlement to his job. He could be returned to his former job without a hearing."); *Meyers v. City of New York*, 208 A.D.2d 258, 262, 622 N.Y.S.2d 529, 532 (2nd Dep't 1995) ("It is well settled that a probationary employee, unlike a permanent employee, has no property rights in his position and may be lawfully discharged without a hearing and without any stated specific reason."). Therefore, Cramer does not have a property interest on which to base a due process claim and his claim of denial of due process for the failure to provide a hearing must be dismissed.[7]

*H. Plaintiff Fails to Prove a Violation of His Liberty Interest*

Courts have established that the "liberty" interest protected by the due process clause includes in certain circumstances the right to contest at a public hearing, stigmatizing governmental accusations that impose a substantial disability. *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S. Ct. 507, 27 L. Ed. 2d 515 (1971). "Because dismissal from employment for stigmatizing reasons can imperil the opportunity to earn one's living in one's profession, the

---

[7] Because Cramer does not have a property interest on which to base a due process claim, Cramer's due process access to courts claim is also dismissed.

liberty interest cause of action has most pointedly focused on stigmatizing statements in the context of dismissal." *O'Neill v. City of Auburn,* 23 F.3d 685, 691 (2d Cir. 1994). A statement carries stigma sufficient to implicate a liberty interest only if it deprives the fired employee of the "freedom to take advantage of other employment opportunities." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). This circuit has required that such a statement go "to the very heart of [the employee's] professional competence." *O'Neill*, 23 F.3d at 692-93. Defendants correctly argue that it requires "something considerably graver than a charge of failure to perform a particular job, lying within the employee's power to correct." *Id.* at 692 (quoting *Russell v. Hodges*, 470 F.2d 212, 217 (2d Cir. 1972)). For example, charges of dishonesty, immorality or illegality are statements beyond a plaintiff's power to correct and are necessary plus factors establishing stigmatization. *LaForgia v. Davis*, No. 01-7599, 2004 WL 2884524, at *7 (S.D.N.Y. Dec. 14, 2004). "A statement that an employee poorly performed [his] duties or acted in an improper manner is insufficient to establish defamation." *Id.* at *8.

    To the extent that Cramer alleges a deprivation of his liberty interest in his Complaint, his claim must fail because Pyzowski's statements that Cramer poorly performed at his job are insufficient to establish a deprivation of Cramer's liberty interest. Accordingly, this claim must be dismissed.

*I. Plaintiff's State Law Claims*

In addition to his federal claims, Cramer asserts discrimination claims under the New York State and New York City Human Rights Laws, as well as claims of defamation, slander, libel, and prima facie tort. The decision whether to exercise supplemental jurisdiction over these state law claims is left to the discretion of the district court. *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 105 (2d Cir. 1998). Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a state law claim where, as here, it dismisses all of the federal claims over which it has original jurisdiction. Because none of Plaintiff's disputes with Defendants are cognizable under federal law, this Court will decline to exercise supplemental jurisdiction over Cramer's state law claims.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED in its entirety and Plaintiff's claims are dismissed. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated:  Brooklyn, New York
        May 25, 2007

_____/s/_____
SANDRA L. TOWNES
United States District Judge
